# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

LORENZO MALONE,         )
                             )
      Petitioner,          )
v.                          )        No. 3:09-0949
                             )        Chief Judge Haynes
JAMES FORTNER, Warden    )
                             )
      Respondent.      )

## M E M O R A N D U M

Petitioner, Lorenzo Malone, filed this pro se action under 28 U.S.C. § 2254 to set aside his state court conviction of first degree felony murder, for which he received a life sentence. After a review of his petition, the Court granted Petitioner's motion to appoint counsel and appointed the Federal Public Defender to represent Petitioner. (Docket Entry No. 4). The Court also granted Petitioner leave to file an amended petition. Id. (Docket Entry Nos. 3 and 4). Petitioner subsequently filed an amended petition[1] prepared by his counsel with the following claims:

> 1. Petitioner was denied his right to due process because the trial court's jury instruction omitted a required element of the offense;

> 2. The state prosecutor violated Petitioner's right to a fair trial and due process by making improper comments during closing argument,

---

[1] Petitioner asserts that his "amended petition supplements his pro se petition, but does not supercede [Petitioner's] pro se petition". (Docket Entry No. 21 at 5). As in prior decisions, this Court deems the amended petition to supercede "completely" the pro se petition. Drake v. City of Detroit, Michigan, 266 Fed. Appx. 444, 448 (6th Cir. 2008). The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005). Under Fed. R. Civ. P. 15(a), the filing of an amended complaint supercedes the prior complaint. Drake, 266 Fed. Appx. at 448; Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986). Although the amended petition adopts and incorporates by reference the claims in the original pro se petition, Petitioner does not brief or present argument on all of those claims. Any claim that is not briefed is deemed waived. See United States v. Sandridge, 385 F.3d 1032, 1035 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Moreover, a party who has counsel cannot file separate papers, United States v. Howton, 229 Fed. Appx. 362, 370 (6th Cir. 2005), including in habeas actions. Keenan v. Bagley, No. 1:01CV2139, 2010 WL 1133238, at *1 (N.D. Ohio 2010).

3.  Petitioner's trial counsel was ineffective for failing: to object to the improper jury instruction; to offer proof that Petitioner's statement was involuntary; to offer proof of Petitioner's mental health and competency in order to obtain an acquittal or lesser included offense plea; to move to suppress evidence obtained through an invalid search warrant; to appeal the denial of the motion to suppress; to object to the prosecutor's unfairly prejudicial remarks during closing argument; to call a co-defendant as a witness at trial in support of Petitioner's theory of defense; to present other evidence in support of Petitioner's theory of defense; and

4.  Petitioner's appellate counsel was ineffective for failing to challenge the improper jury instruction on direct appeal.

(Docket Entry No. 21, Amended Petition).

Respondent filed his answer and the state trial and state post-conviction court records on Petitioner's state proceedings. (Docket Entry Nos. 28 and 29, Addendum 1 and Docket Entry No. 30, Addenda 2 through 4). In his answer, Respondent contends, in sum: (1) that most of Petitioner's claims in the amended petition[2] are time-barred; (2) that Petitioner's closing argument claim is procedurally defaulted; (3) that the state courts' denial of Petitioner's ineffective assistance of counsel claims for his counsel's failures to move to suppress evidence and the trial court's related ruling are neither contrary to nor an unreasonable application of clearly established federal law; and (4) that the new claims in the amended petition are also procedurally defaulted.

Before the Court is Petitioner's motion for summary judgment[3] (Docket Entry No. 33),

---

[2]Respondent contends that Petitioner's amended petition converts his separate claims involving the lack of proper jury instruction on criminal responsibility for aggravated burglary and the State's prosecutor's improper closing argument into separate and distinct claims of ineffective assistance of counsel that are based on the former claims, but were not raised in Petitioner's pro se petition. (Docket Entry No. 28, Answer to Petition, at 8).

[3]A motion for summary judgment is a viable procedure to address the merits of a federal habeas petition, Blackledge v. Allison, 431 U.S. 63, 80-81 (1977), but is to be considered consistent with the habeas corpus statutes. Rule 11, Rules Governing Section 2254 Cases. As pertinent here, summary judgment rules in evaluating the evidence do not apply given the statutory presumption of correctness of facts found by the state courts. 28 U.S.C. § 2254(e)(1).

reasserting his claims in the amended petition and contending that Petitioner is entitled to relief and requesting an evidentiary hearing. Respondent relies on his answer that contains his legal analysis on Petitioner's claims. (Docket Entry No. 37).

## A. Evidentiary Hearing

As to Petitioner's request for an evidentiary hearing, in the Antiterrorism and Effective Death Penalty Act, ("AEDPA"), Congress redefined the standards for conducting an evidentiary hearing in a habeas action:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - (A) the claims relies on - (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In Williams v. Taylor, 529 U.S. 420 (2000), the Supreme Court explained that if the petitioner demonstrated diligence, then the inquiry ends, but if there is an issue of diligence, then the focus is on whether the petitioner or his counsel knew of the matters at issue and failed to pursue the matter:

> The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts . . . Diligence for purposes of the opening clause [of Section 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend, as the Commonwealth would have it, upon whether those efforts could have been successful.

\*　　\*　　\*

For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must to diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.

\* \* \*

Given knowledge of the report's existence and potential importance, a diligent attorney would have done more. Counsel's failure to investigate these references in anything but a cursory manner triggers the opening clause of § 2254(e)(2). As we hold there was a failure to develop the factual basis of this Brady claim in state court, we must determine if the requirements in the balance of § 2254(e)(2) are satisfied so that petitioner's failure is excused . . . upon a showing, by clear and convincing evidence, that no reasonable factfinder would have found petitioner guilty of capital murder but for the alleged constitutional error.

Id. at 435, 437, 439-440.

Independent of § 2254(e)(2), the Court also has the inherent authority to set an evidentiary hearing in a habeas action. Abdur'Rahman v. Bell, 226 F.3d 696, 705-06 (6th Cir. 2000). "[A] district court does have the inherent authority to order an evidentiary hearing even if the factors requiring an evidentiary hearing are absent." Id. at 705. Such hearings are set "to settle disputed issues of material fact." Id. at 706. Yet, "if [the court] concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the court] may, and ordinarily should accept the facts as found in the hearing. But [the court] need not. In every case [the court] has the power, constrained only by [its] sound discretion, to receive evidence bearing on the applicant's constitutional claim." Id. (quoting Townsend v. Sain, 372 U.S. 293, 318 (1963)). This authority extends to determine factual issues or if an inadequate record exist, on a procedural default controversy. Alcorn v. Smith, 781 F.2d 58, 60 (6th Cir. 1986).

Even prior to ADEA, a habeas petitioner had to show cause for his failure to develop the state record or that "a fundamental miscarriage of justice would result from failure to hold an evidentiary hearing," Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12 (1992). In a word, the distinction between § 2254(e)(2) and the Court's inherent authority to order a hearing is "when a petitioner is entitled to a hearing [under § 2254(e)(2)] . . . versus whether a district court has the inherent discretion to order a hearing [that] is still intact following Williams." Abdur'Rahman, 226 F.3d at 706. Evidentiary hearings have been held to be appropriately denied where the habeas petitioner "has not shown that his . . . claims would result in no reasonable factfinder finding him guilty of the underlying offenses . . . We therefore conclude that the district court did not abuse its discretion by declining to conduct an evidentiary hearing." Abdus-Samad v. Bell, 420 F.3d 614, 626-27 (6th Cir. 2005).

Moreover, the Supreme Court and the Sixth Circuit have observed that: "The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings." Keeney, 504 U.S. at 9; accord Byrd v.Collins, 209 F.3d 486, 516-17 (6th Cir. 2000) (quoting Keeney, 504 U.S. at 9). More recently, the Supreme Court stated "[W]e have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004).

Here, the records of the state proceedings are deemed sufficient to decide the merits of Petitioner's claims. The only issue raised involves the Petitioner's trial counsel's failure to present evidence of Petitioner's mental state, but the state record reflects a mental health evaluation of Petitioner that the state trial court ordered. (Docket Entry No. 29-3 at 3). Petitioner's trial counsel

presented such proof from a psychologist at the sentencing hearing. Id. at 54. Petitioner raised issues about his mental health in his post-conviction petition, but did not offer proof at the post-conviction hearing, (Docket Entry No. 30-4, State Post-Conviction Technical Record at 9), nor pursue this issue in his state post-conviction appeal. Malone, 2009 WL 636120 *2.

Accordingly, the Court concludes that Petitioner has not shown the justification for an evidentiary hearing and his request for an evidentiary hearing should be denied.

## B. Procedural History

On October 9, 2003, a Wilson County Criminal Court jury found Petitioner guilty of one count of first degree murder under "the theory of criminal responsibility" for which Petitioner received a life sentence. State v. Malone, No. M2003-02770-CCA-R3-CD, 2005 WL 1521788 at *1 (Tenn. Crim. App. Jun. 27, 2005). On direct appeal, Petitioner asserted the following claims that the trial court erred: (1) by refusing to strike for cause a potential juror, a former employee of the District Attorney's office; (2) by admitting photographs of the victim and a videotape into evidence; and (3) by failing to grant a mistrial based upon the prosecutor's improper closing arguments that exceeded the scope of the evidence. Id. at 2, 4 and 6. The Tennessee Court of Criminal Appeals affirmed Petitioner's conviction and sentence. Id. at 6. Petitioner did not appeal that decision.

On June 26, 2006, with the assistance of counsel, Petitioner filed a state post-conviction petition asserting several claims of ineffective assistance of his trial and appellate counsel. Malone v. State, No. M2007-02641-CCA-R3-PC, 2009 WL 636120 at * 2, 3 (Tenn. Crim. App. Mar. 11, 2009). Petitioner correctly asserts that he also presented a claim that the trial court erred by failing to instruct the jury properly, but that claim was pled as a state law claim, (Docket Entry No. 30-4, State Post-Conviction Technical Record at 11) and Petitioner did not pursue that claim in his post

conviction appeal. (Docket Entry No. 30-14 at 5). After an evidentiary hearing, the trial court denied

the petition, specifically concluding that the "natural and probable consequences" instruction was

inapplicable, and that trial and appellate counsel provided effective and competent assistance.

(Docket Entry No. 30-4, State Post-Conviction Technical Record, Order at 29-30). On March 11,

2009, the Tennessee Court of Criminal Appeals affirmed the trial court's order denying relief.

Malone, 2009 WL 636120 at * 3. Petitioner's claims on the post conviction appeal were: ineffective

assistance of his trial and appellate counsel concerning trial counsel's failure to a motion to suppress

the search warrant and appellate counsel's failure to present a claim concerning Petitioner's illegal

arrest. Id. On August 17, 2009, the Tennessee Supreme Court denied Petitioner's application for

permission to appeal. Id. at 1.

### C. Respondent's Limitations Challenge

A threshold issue is Respondent's contention that many of Petitioner's claims in his amended

petition are time barred because these claims were asserted after the expiration of the federal habeas

statute of limitations. Respondent's specific argument is that these claims are not in Petitioner's pro

se petition . Respondent concedes that the original pro se petition filed timely. Respondent identifies

the untimely claims as:

> 1. The omission of a jury instruction regarding criminal responsibility for aggravated
> burglary denied his right to due process.
>
> 2. The prosecutor's comments during closing argument violated petitioner's right to a
> fair trial and due process, specifically: (1) arguing that the petitioner and his
> codefendants knew the victim was frail and selected her house for that reason; (2) stating
> that "everybody should be proud of" police officers; (3) by assembling the shotgun in
> front of the jury and simulating the beating of the victim with the gun.
>
> 3. Trial/appellate counsel was ineffective in (1) failing to object to improper jury
> instructions; (2) failing to raise any claim on appeal challenging petitioner's conviction
> on the basis of improper jury instructions; (3) failing to present key evidence in support

of the pretrial motion to suppress petitioner's statement; (4) failing to utilize mental health and competency evidence to argue for acquittal or conviction of a lesser offense; (5) failing to object to prejudicial remarks of the prosecutor during closing argument; and (6) failing to present the testimony of codefendant Baker to support the defense theory.

(Docket Entry No. 28, Answer to Petition, at 8).

The Court's review of the Petitioner's pro se petition in this action reveals the following claims:

### GROUND ONE

The trial court erred by refusing to dismiss for cause a potential juror who worked for the District Attorney's office, thereby violating the Petitioners Fourteenth Amendment due process rights and Sixth Amendment right to a fair trial. The Tennessee Court of Criminal Appeals Opinion on this matter was contrary to and/or was an unreasonable application of clearly established federal law in failing to find that the Petitioner's Fourteenth Amendment right to due process and Sixth Amendment right to a fair trail were violated.

*   *   *

### GROUND TWO

The trial court erred by failing to grant a mistrial based on impropriety in the State's closing argument. .... The State made improper remarks and exceeded the scope of the evidence during its closing argument. Specifically, the defendant argued that the State addressed points not in evidence, including that the victim "lived a very good life and had served the community as the police chief's wife." Further, the prosecutor improperly characterized him as the "lead sheep" of the group and referred to him and his codefendants as "yahoos."

### GROUND THREE

Trial counsel was ineffective for failing to move to suppress the physical evidence at trial. The Tennessee Court of Criminal Appeals opinion on this matter was contrary to or was an unreasonable application of clearly established federal law in failing to find that the Petitioner's Fourteenth Amendment constitutional right to due process and Sixth Amendment right to a fair trial were violated. The evidence at trial consisted of the Petitioner's statement and physical evidence recovered pursuant to a search warrant. In short, the evidence at trial was the fruit of information given by Michelle, Steverson, and an informant. (T.E., pp.15-18). Prior to trial, counsel moved

8

to suppress the Defendant's confession based on the lack of probable cause to arrest the Petitioner, but she failed to move to suppress the fruits of the search warrant that was based on the same probable cause.

**GROUND FOUR**

The trial counsel was inefficient for failing to appeal the trial court's denial of a motion to suppress the defendant's confession. . . . As opposed to the physical evidence, trial counsel did move to suppress the defendant's statement based on lack of probable cause underlying the Petitioner's arrest. Trial counsel essentially argued, as undersigned counsel did above, that the Petitioner's statement was the fruit of his arrest, which, in turn, was the fruit of the information given by Michelle Steverson. Because that information did not establish probable cause, counsel argued, the statement itself should have been suppressed.

(Docket Entry No. 1, Petition at 4, 7, 9 and 12).

Under 28 U.S.C. Section 2244(d)(1), a person convicted in state court has one (1) year from the time the conviction becomes final on direct appeal to file a federal petition. Yet, under 28 U.S.C. § 2244(d)(2), "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection." Id. (emphasis added). Although Respondent does not challenge the timeliness of the pro se petition, Respondent argues that claims in the amended complaint are untimely.

For context, the Tennessee Court of Criminal Appeals decided Petitioner's direct appeal on June 27, 2005, but Petitioner did not appeal that decision. On June 26, 2006, Petitioner filed his state post conviction petition. Including a 60 days period to appeal to the Tennessee Supreme Court, 304 days of the federal habeas statute of limitation had run by June 26, 2006. Yet, the federal habeas limitation was tolled until the conclusion of Petitioner's state post conviction proceeding, namely, ninety days after the Tennessee Supreme Court denied Petitioner's application for permission to

appeal on August 17, 2009.

Petitioner timely filed this action on October 8, 2009 and the Court appointed counsel for Petitioner on October 9, 2009. (Docket Entry Nos. 1 and 4). After granting Petitioner's counsel's requests for extensions, (Docket Entry Nos. 14, 16, 18 and 20), Petitioner filed his amended petition on July 10, 2010. (Docket Entry No. 21). By the Court's calculation, none of the claims in Petitioner's amended petition are timely unless those claims relate back to the claims in the Petitioner's pro se petition.

As a governing principle, the pendency of a federal habeas action does not toll the limitation period for filing of a federal habeas claims. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Thus, none of the extensions to file an amended petition in this action can toll the limitations period in AEDPA. Under certain conditions, the relation back doctrine under the Fed. R. Civ. P. 15(c)(2) can apply in a habeas action, but only to the extent that its application does not conflict with the AEDPA limitation period. Mayle v. Felix, 545 U.S. 644, 649 (2005). As the Supreme Court stated in Mayle:

> **An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.**
>
> * * *
>
> Habeas Corpus Rule 11 permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules . . ." Section 2242 specifically provides that habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions."
>
> * * *
>
> If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.

* * *

So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.

Id. at 650, 654, 662, 664 (emphasis added).

From the Court's comparison, the amended petition presents claims that were not presented in the state courts and thus, each of the contested claims constitutes "a new ground for relief" under Mayle, 545 U.S. at 650. These "new grounds" for relief are not based upon facts in the original pro se complaint. There, the ineffective assistance of counsel claims involved motions to suppress; not jury instruction claims nor the Petitioner's mental health nor a co-defendant's testimony nor the prosecution's closing argument. The amended petition also differs on the state prosecution's closing argument claim in the pro se petitioner because the amended petition adds different facts namely the prosecutor's "assembling the shotgun in front of the jury and simulating the beating of the victim with the gun."

Thus, the Court concludes that based upon the relation back doctrine, Petitioner's claims for improper jury instruction on criminal responsibility for aggravated burglary; his counsel's failures to object to the improper jury instruction and State prosecutor's closing argument as ineffective assistance of counsel, are time-barred under 28 U.S.C. § 2244(d)(1). Mayle, 545 U.S. at 649. Whether these claims are also procedurally defaulted is addressed separately.

### D. Procedural Defaults

Respondent also argues that several of Petitioner's claims in his amended petition are procedurally defaulted for Petitioner's failures to present these claims to the state courts. These challenged claims are:

1. The omission of a jury instruction regarding criminal responsibility for aggravated burglary denied his right to due process.

2. The prosecutor's comments during closing argument violated petitioner's right to a fair trial and due process, specifically: (1) arguing that the petitioner and his codefendants knew the victim was frail and selected her house for that reason; (2) stating that "everybody should be proud of" police officers; (3) by assembling the shotgun in front of the jury and simulating the beating of the victim with the gun.

3. Trial/appellate counsel was ineffective in: (1) failing to object to improper jury instructions; (2) failing to raise any claim on appeal challenging petitioner's conviction on the basis of improper jury instructions; (3) failing to present key evidence in support of the pretrial motion to suppress petitioner's statement; (4) failing to utilize mental health and competency evidence to argue for acquittal or conviction of a lesser offense; (5) failing to object to prejudicial remarks of the prosecutor during closing argument; and (6) failing to present the testimony of codefendant Baker to support the defense theory.

(Docket Entry No. 28, Answer to Petition, at 8).

From the Court's review, Petitioner's claims of ineffective assistance of counsel for their failure to object to, and directly appeal the jury instructions were not presented to the state courts. Petitioner claims about state trial court's failing to instruct the jury properly on the "natural and probable" consequence rule was presented to the state courts, but solely as a state law question. (Docket Entry No. 30-4, Post-Conviction Technical Record, Petition attached thereto, at 11-12).

Claims in a federal habeas petition must have been "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution"). A claim supported only by citation to state law is insufficient to present a federal claim, even if the cited state decision restated an analysis of federal law. Anderson v. Harless, 459 U.S. 4, 7-8 n.3, (1982) (per curiam). The federal petitioner must inform the state courts of his federal legal theory or of the issue that arises

under federal law. Franklin v. Rose, 811 F.2d 322, 325-26, (6th Cir. 1987) ("To fairly present his constitutional argument to the state courts required more than the use of a generalized catch-all phrase which merely alleged the deprivation of a fair trial under the United States Constitution.). Petitioner, however, can cite to state law cases that were decided upon federal law grounds in similar factual circumstances. Levine v. Torvick, 986 F.2d 1506, 1516 (6th Cir. 1993).[4]

In the trial court and in his state post-conviction proceeding, Petitioner presented his jury instruction claims based only on state law. (Docket Entry No. 30-4 at 11-12 and Docket Entry No. 29-7, Trial Transcript at 16). The state trial court record reveals that the post-conviction court ruled that the natural and probable consequences instruction was inapplicable because the homicide was

---

[4]In an unreported decision, Houston v. Waller, 420 Fed.Appx. 501, 508-09 (6th Cir. Apr. 20, 2011), the Sixth Circuit stated "Determining when a claim has been 'fairly presented' is contextual and individual to each case." The Circuit court has also stated that:

> Recognizing that "[a] claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts,"...this Court reiterated that there are four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented": (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. McMeans [v. Brigano], 228 F.3d [674, 681 (6th Cir. 2000)] (citing Franklin v. Rose, 811 F.2d 322, 326 (6th Cir.1987)).

> \*   \*   \*

> ...[E]ven if a particular matter is not treated generally as having constitutional dimension, if the courts of the state in question have themselves previously treated that fact pattern as appropriate for constitutional analysis, it would be unreasonable to suppose that they are not alert to constitutional considerations. Thus we consider that a defendant who cites state precedent that employs pertinent constitutional analysis has adequately put the state courts on notice of the constitutional thrust of his claim. Daye, 696 F.2d at 193-94 (internal footnotes, citations, and quotations omitted; emphasis added).

Id. at 510. See also Beach v. Moore, 343 Fed.Appx. 7, 10-11 (6th Cir. 2007).

committed close in time to the aggravated burglary and thus, akin to the Tennessee felony murder statute, relying on State v. Winters, 137 S.W.3d 641 (Tenn. Crim. App. 2004). The trial court's opinion stated that "[t]he 'natural and probable consequences' instruction is inapplicable to this case." (Docket Entry No. 30-4 at 29).

For this jury instruction claim, Petitioner's state post-conviction petition relied upon three state decisions: State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000); State v. Howard, 30 S.W.3d 271 (Tenn. 2000); and State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975). Petitioner's specific contention was that trial court's erroneous jury instructions "deprived Petitioner of his constitutional right to a fair jury trial by failing to adequately instruct the jury to consider the applicable law . . . [because] [i]n criminal cases, a defendant has a right to correct and complete charge of the law." (Docket Entry No. 30-4 at 11, Post-Conviction Technical Record). Two of the three state cases cited by Petitioner employ federal constitutional analysis, but only on the "harmless error analysis" under Neder v. United States, 527 U.S. 1 (1999). "Our court has applied a similar [Neder] analysis when interpreting the Tennessee Constitution." Garrison, 40 S.W.3d at 434. Howard applied federal constitutional analysis and the federal Fifth Amendment's prohibition against double jeopardy:

> The Fifth Amendment to the United States Constitution also provides that no "person shall be subject for the same offense to be twice put in jeopardy of life or limb." When a conviction is reversed for insufficient evidence, the guarantee against double jeopardy mandates dismissal. See Burks v. United States, 437 U.S. 1, 10, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). But when a conviction is reversed on appeal for trial errors, the guarantee against double jeopardy generally does not preclude a retrial of the defendant. See Lockhart v. Nelson, 488 U.S. 33, 39, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

Howard, 30 S.W.3d at 277.

These state court decisions' references to federal constitutional standards do not involve jury

instructions so as to put the state courts on notice of Petitioner's federal theory for this jury instruction claim. Thus, the Court concludes that Petitioner jury instruction claim and Petitioner's related new ineffective assistance of counsel claim are unexhausted and thus, must consider if those claims are procedurally defaulted.

As to Petitioner's procedural default contentions, an extension of the comity policy that underscores the exhaustion doctrine, is the "Procedural Default Doctrine" that may also bar consideration of a federal claim in a habeas action. As defined by the Supreme Court, under this doctrine

> [t]his Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would, therefore, be advisory. . .

*   *   *

> . . . the doctrine applies also to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on an independent and adequate state procedural ground.

Coleman, 501 U.S.722, 729-30 (1992) (emphasis added and citations omitted).

The rationale for this doctrine arises out of federal respect for federalism and maintaining comity with state courts:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without a rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's

jurisdiction and a means to undermine the State's interest in enforcing its laws.

\* \* \*

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. . . . In the absence of an independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the State's interest in correcting their own mistakes is respected in all federal habeas cases.

Id. at 730-32.

In Murray v. Carrier, 477 U.S. 478 (1986), the Supreme Court noted that state procedural rules channel the controversy to the state trial and appellate courts.

[A] state's procedural rules serve vital purposes at trial, on appeal, and on state collateral attacks. ... Each state's compliment of procedural rules ... channel[s] to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently. Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercut[s] the state's ability to enforce its procedural rule[s]. (quoting Engle, 456 U.S. at 129, and Reed v. Ross, 468 U.S. 1, 10, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)).

Id. at 490-91.

Petitioner did not present these claims in his amended petition on his direct appeal. Petitioner also did not present these claims to the Tennessee Supreme Court in his state post-conviction appeal. Thus, under Tenn. Code Ann. § 40-30-106(g), the claims are deemed waived. Under that statute, "[a] ground for relief [in] in a post-conviction proceeding] is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction," as here, on appeal from the judgment of the trial court. Tenn. Code Ann. § 40-30-106(g). The Sixth Circuit has found that the Tennessee waiver statute,

Tenn. Code Ann. § 40-30-106(g), to be an independent and adequate state rule that is regularly enforced. Cone v. Bell, 243 F.3d 961, 969 (6th Cir. 2001), overruled on other grounds by Bell v. Cone, 535 U.S. 685 (2002)).

"If a petitioner has not exhausted his claims, but is now procedurally barred from doing so, he must show "cause for the noncompliance" and "actual prejudice resulting from the alleged constitutional violation." Wainwright v. Sykes, 433 U.S. 72, 84 (1977). Procedural default may also be excused "where a constitutional violation has probably resulted in the conviction of one who is actually innocent [.]" Murray, 477 U.S. at 496. A petitioner can show cause if he can "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. (citing Murray, 477 U.S. at 488, 106 S.Ct. 2639). "Examples of such objective factors are 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" McCleskey v. Zant, 499 U.S. 467, 493-94 (1991)). Where a Petitioner "makes no argument that this procedural default should be excused, under either the cause-and-prejudice or miscarriage of justice exceptions" these claims must be dismissed. Rayner v. Mills, 685 F.3d 631, 644 (6th Cir. 2012).

As to whether Petitioner's contention that his counsel's failures can establish cause, these claims in the amended petition are for his counsel's failure: (1) to object to the improper jury instructions; (2) to raise the improper jury instructions on direct appeal; (3) to object to unfairly prejudicial remarks made by the prosecutor in closing argument; (4) to call a co-defendant to testify; (5) and (6) to present other evidence in support of his theory of defense, collectively rose to the level of ineffective assistance of counsel.

Yet, these claims of ineffective assistance of counsel were not properly presented to the state

court and thus, cannot prove cause, as the Supreme Court stated:

> The question raised by the present case is whether [the] exhaustion requirement for claims of ineffective assistance asserted as cause is uniquely immune from the procedural-default rule that accompanies the exhaustion requirement in all other contexts-whether, in other words, it suffices that the ineffective-assistance claim was 'presented' to the state courts, even though it was not presented in the manner that state law requires. That is not a hard question. An affirmative answer would render [the] exhaustion requirement illusory.

*   *   *

> To hold, as we do, that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not itself be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim.

Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000). To be sure, the Supreme Court created an equitable exception under Martinez, but Petitioner has not shown Martinez to apply here.

Thus, the Court concludes Petitioner has not demonstrated cause or prejudice to excuse his procedural defaults on his claims of ineffective assistance of trial and direct appeal counsel nor his claims for improper jury instructions.

### F. Review of the State Court Record

For Petitioner's exhausted claims of his counsel's ineffectiveness for improper closing argument and failure to move for suppression of evidence on direct appeal, the Tennessee Court of Criminal Appeals found the following facts[5] on Petitioner's underlying convictions:

> In the late spring of 2001, the defendant and one of his codefendants, Harvey Baker, were shot at while sneaking through backyards and "scoping out" homes on Castle Heights Drive in Wilson County. Approximately three months later, on the night of

---

[5] State appellate court findings in its opinion can constitute factual findings under 28 U.S.C. § 2254(d). Sumner v. Mata, 449 U.S. 539, 546-47 (1981). These factual findings are in the appellate opinion on Petitioner's post-conviction appeal.

August 2, the defendant returned to 908 Castle Heights Drive, along with his codefendants Baker and Richard Porter. Porter illuminated the back of the home with a flashlight and Baker opened the rear sliding glass door to the basement while the defendant held a shotgun. Upon entering the home, Baker took the shotgun from the defendant, and the three men climbed the stairs to the den.

Once inside the den, the defendant waited by a gun case while his codefendants went through the house to see if anybody was home. The codefendants found eighty-three year old Robbie Jones, the victim in this case, sleeping in her bedroom. The codefendants then used the butt of the shotgun to beat Ms. Jones to death in her room. The defendant listened to "her moan" while using a BB gun to break the glass gun case open and collect its contents. All three men then grabbed guns from the case and fled the way in which they came into the home. However, the codefendants subsequently reentered the home to collect a shell casing, which had fallen out of one of the guns, while the defendant stood in the driveway to keep a lookout for police.

On the morning of August 3, 2001, Lynn Wills found her mother, Ms. Jones, lying dead at the foot of her bed. Wills then dialed 911. Responding officers investigated the scene, interviewed neighbors, and turned over twenty-seven items to Hunter Greene at the Tennessee Bureau of Investigation for DNA testing.

Detective Scott Massey of the Lebanon Police Department received a call on August 5, 2001, from one of the neighbors who had been interviewed, Michelle Steverson. Steverson was the girlfriend of Baker and roommate of all three codefendants at 911-G Castle Heights drive. Detective Donnie Self was dispatched to conduct the interview of Steverson. The interview revealed the locations of all three codefendants.

Once the defendant was arrested, he gave a statement admitting his involvement in the crimes to Detectives Joe Jones and Chris Melvin. Executing a search warrant of his residence, the officers found a 1964 half dollar stolen from Ms. Jones' home, the shotgun used to beat Ms. Jones in the defendant's laundry room, and several of the stolen guns in the woods behind the residence. In addition, the officers received consent from the defendant's sister, Marlena Leftrich, to search her residence. Inside this residence, the officers found a bag that the defendant had hid which contained a Colt gun box and the BB gun used to break open Ms. Jones' gun case. The officers were also granted consent to search the defendant's mother's home, where they found three additional stolen handguns.

Before trial, the voir dire examination revealed that a prospective juror was a former clerk at the District Attorney's office. However, the trial court questioned the potential juror and found her to be impartial. Based upon this finding, the trial court refused to strike the juror for cause, and the defendant used a peremptory strike. In response to the defendant's objection to the State's introduction of post-mortem

photographs of the victim, the trial court conducted a jury-out hearing to consider the testimony of Dr. Bruce Levy, the medical examiner who performed the autopsy. Dr. Levy testified during the jury-out hearing that the autopsy photographs of the victim would assist in his testimony. Based upon this testimony, the trial court determined the photographs to be relevant and that their probative value substantially outweighed any potentially prejudicial effects.

At the conclusion of the State's evidence, the defendant declined to present any proof and proceeded to closing argument. At the conclusion of the closing arguments, the defense counsel moved for a mistrial based upon the allegedly improper scope of the closing argument. However, the trial court summarily denied the motion, and the jury convicted the defendant of first degree felony murder based upon the theory of criminal responsibility. The trial court then sentenced the defendant to life with the possibility of parole. He now brings this appeal.

Malone, 2005 WL 1521788, at *1-2. The Tennessee appellate court's other factual findings are set forth in the context of Petitioner's claims.

## G. Conclusions of Law

The merits of Petitioner's exhausted claims are governed by AEDPA's provisions. Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." In such

instances, the Supreme Court held that a federal habeas court may grant a writ. Id. The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings as opposed to dicta" of its decisions at the time of the state court decision. Id. at 412. Moreover, the relevant analysis is "to apply a rule of law that was clearly established at the time the Petitioner's state court conviction became final." Id. at 390; accord, Joshua v. Dewitt, 341 F.3d 430, 436 (6th Cir. 2003). In Bell v. Cone, 535 U.S 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, the Supreme Court stated that a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme Court's] decision but unreasonably applies [that principle] to the facts of the particular case." Id. at 694. The district court "must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," Williams, 529 U.S. at 409, and a district court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly

incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d at 738 (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

### 1. Ineffective Assistance of Counsel Claims

In Petitioner's amended petition, the only viable ineffective assistance of counsel claims [6] are his trial counsel's failure to suppress evidence, to call a certain witness and to object to improper argument. In Petitioner's post-conviction appeal, the Tennessee Court of Criminal Appeals found the following relevant facts on those claims:

> On June 26, 2006, the Petitioner, with the assistance of counsel, filed a petition for post-conviction relief alleging that he did not receive the effective assistance of counsel at trial or on direct appeal (the same lawyer represented the Petitioner at trial

---

[6] Petitioner had the same counsel at trial as on direct appeal. (Docket Entry No. 1 at 14).

and on direct appeal and hereinafter will be referred to as "counsel"). As specific grounds for relief, the Petitioner averred that counsel was constitutionally ineffective at trial for failing to: (1) offer proof at the suppression hearing that the Petitioner's statement was involuntary; (2) challenge the probable cause supporting the search warrant; (3) contemporaneously object to the prosecutor's "inflammatory remarks"; (4) call co-defendant, Harvey Baker, to testify at trial; and (5) offer proof or argue that the burglary and homicide were unrelated. The Petitioner argued that the cumulative effect of counsel's errors denied him the effective assistance of counsel at trial. **Regarding his direct appeal, the Petitioner submitted that counsel was ineffective for failing to: (1) appeal the motion to suppress the Petitioner's confession based upon lack of probable cause to arrest; and (2) include the videotape on appeal. He further contended that the trial court failed to properly instruct the jury on the applicable law, that counsel was ineffective for failing to request a jury instruction on "the natural and probable consequences rule[,]" and that this issue should have been included on appeal.**

Malone, 2009 WL 636120, at *2 (emphasis added).

## 1. Failure to File Suppression Motions

The Tennessee Court of Appeals cited the trial court's findings on Petitioner's suppression

motion claims and affirmed the dismissal of that claim. Id. at 9.

> The Petitioner acknowledges that trial counsel did file a motion to suppress his confession. In the motion to suppress, the Petitioner argued that his arrest was not supported by probable cause.
>
> The [Petitioner's] arrest was based upon information provided by Yvonne'de Michelle "Shell" Steverson and Dorrell Clemmons. [The Petitioner] submits that both of these individuals qualify as "informants" whose basis of knowledge and credibility was not properly established under State v. Jacumin, 778 S.W.2d 430, 436 (Tenn.1989). As such, a probable cause finding can not properly be based upon information provided by these individuals.
>
>          *   *   *
>
> Counsel also referenced the search warrant at the suppression hearing, contending that Steverson was a suspect in the crime; otherwise, her consent to search would alone have been enough to search the premises. Specifically, trial counsel stated that "it gets down to whether she was a citizen informant," to which the trial judge responded, "She's not even a confidential informant. She's named in the body of the search warrant." The trial court also noted,

*  *  *

Counsel testified that she filed a suppression motion, arguing that the Petitioner was arrested without probable cause. When asked if she was able to determine if Steverson was a criminal informant or not, counsel responded that she attempted to cross-examine Det. Massey at the suppression hearing about his knowledge of Steverson. However, she was unsuccessful in determining whether Steverson was a criminal informant or citizen informant. Counsel also affirmed that she represented the Petitioner on direct appeal and that she did not appeal the informant issue.

*  *  *

On cross-examination, counsel testified that she filed numerous motions on behalf of the Petitioner and met with him on multiple occasions. When asked about Steverson, counsel opined that Steverson was a citizen informant. Counsel stated, "When I raised the issue in the Motion to Suppress, I had no real expectation of being successful, however, I wanted to utilize the opportunity to both see and hear the State's witnesses and possibly gain from those hearings something that I could use at trial for impeachment purposes." Counsel also hoped that the State would call Steverson as a witness at the hearing and that she would be able to cross-examine her.

The post-conviction court concluded that the Petitioner failed to prove his allegations of ineffectiveness regarding the suppression issues by clear and convincing evidence, ruling as follows:

You know, I don't believe that Jacumin goes that far. I believe it relates to confidential informants. In this search warrant, Ms. Steverson's name is out there. It is out there for everybody in the public to see that name. Indeed there's corroborating information from the police officers, all of those kinds of things that are in this record today, in the record contained in the transcript and the proceedings of this trial back in 2003, all of those things, and indeed, as it relates to that issue, the search warrant issue, the voluntariness issue, I don't think you have even come up to a preponderance of the level to say that your counsel was ineffective. Indeed I find to the contrary, there is clear and convincing evidence in this record that she was not only competent, but as effective as one could be given the facts and circumstances that you presented with.

It appears from the information in the record that Steverson was a citizen informant. "We can find no indication that [Steverson] was from the criminal milieu or that she received any remuneration from the police for her assistance." State v. Oscar C. Wells, No. W2002–01486–CCA–R3–CD, 2003 WL 22204524, at *3 (Tenn.Crim.App., Jackson, Sept. 16, 2003); see also State v. Lewis, 36 S.W.3d 88, 98–99 (Tenn.Crim.App.2000) While there was testimony that Steverson inquired about a reward, there was no suggestion that she ever received any compensation in

exchange for her information. Thus, Steverson's information is presumed reliable. Lewis, 36 S.W.3d at 98–99. Accordingly, there need be no further showing regarding Steverson's veracity or basis of knowledge.

Nonetheless, even if Steverson were classified as a criminal informant, the affidavit is sufficient to satisfy the standard of Aguilar–Spinelli two-pronged test.[7] The three men resided in Steverson's home, they confessed to her, and proceeds of the burglary were located in her home, demonstrating her basis of knowledge. Regarding the reliability of her information, Steverson relayed information about the crimes that could be known only by someone at the scene or conveyed from someone at the scene. Moreover, the details provided by Steverson were corroborated by independent evidence gathered by police. The information provided in the affidavit was sufficient to establish probable cause for the issuance of a search warrant. The Petitioner has not shown ineffective assistance of counsel.

Malone, 2009 WL 636120 at ** 4-5, 6-7, 8-9.

To prevail on these claims of ineffective assistance, Petitioner must demonstrate that, under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel

---

[7] The Supreme Court has "abandoned" the Aguilar–Spinelli two-pronged test "for determining whether an informant's tip suffices to establish probable cause for the issuance of a warrant and substituted in its place a 'totality of the circumstances' approach." United States v. Leon, 468 U.S. 897, 904 n.5 (1984).

has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and **strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation.** In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, **a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.**
>
> **The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.** Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id. at 690-91 (emphasis added).

In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Wiggins v. Smith, 539 U.S. 510, 521 (2005). Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harris v. Bell, 417 F.3d 631, 639 (6th Cir. 2005); see also Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991) ("[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to

investigate his options and make a reasonable choice between them."). As the Sixth Circuit observed on whether counsel's failures were constitutionally infirm, that:

> The Supreme Court recognized that in the context of ineffective assistance claims based on counsel's 'failure to investigate,' the temptation to rely on hindsight is particularly strong. Consequently, the Court made clear that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . .." Id. at 690, 104 S.Ct. at 2066. However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Id. at 690-91, 104 S.Ct. at 2066.

Sims v. Livesay, 970 F.2d 1575, 1579-80 (6th Cir. 1992) (emphasis in original and added). Claims of ineffective assistance of counsel present mixed questions of law and fact. Mitchell, 325 F.3d at 738.

As to the Petitioner's claims for ineffective assistance of counsel, the Tennessee Court of Criminal Appeals noted the state trial court's findings and also found that Petitioner failed to demonstrate either deficient performance or prejudice on this claim. A suppression motion was filed. The witness was not deemed subject to the criminal informant category. There were consents by authorized persons to search the residence. Malone, 2005 WL 1521788 at *1. (" In addition, the officers received consent from the defendant's sister, Marlena Leftrich, to search her residence. Inside this residence, the officers found a bag that the defendant had hid which contained a Colt gun box and the BB gun used to break open Ms. Jones's gun case. The officers were also granted consent to search the defendant's mother's home, where they found three additional stolen handguns.")

Thus, the Court concludes that the state courts reasonably applied federal law to Petitioner's

exhausted claims about his counsel on the suppression issues at his trial.

## 2. Failure to Appeal Certain Claims

For these claims, Petitioner asserts that his trial counsel who was his appellate counsel should have raised the suppression issue on appeal.

> When asked about the issues she choose to raise on appeal, counsel stated that she did some additional research on the suppression issue and that she was unable to find any case law in support of her position. She decided not to include the issue on appeal because she felt it "would probably detract from some of [the] other issues." Counsel noted that, even if Steverson was determined to be a criminal informant, the details provided by Steverson greatly enhanced her credibility because those details were not known to the public and were corroborated by independent police investigation.

> The information provided in the affidavit was sufficient to establish probable cause for the issuance of a search warrant. The Petitioner has not shown ineffective assistance of counsel.

> The Petitioner also argues that counsel erred in failing to appeal the trial court's ruling on the motion to suppress his statement, contending that his confession resulted from an arrest without probable cause. However, the information provided by Steverson served as the basis for both the search warrant and the Petitioner's arrest, and we have already determined that this information established sufficient probable cause to support the search warrant. The same rationale applies to this issue.

> Additionally, if an issue has no merit or is weak, counsel's performance will not be deficient for failure to raise it, and a petitioner will have suffered no prejudice. Carpenter v. State, 126 S.W.3d 879, 887 (Tenn.2004). Appellate counsel is not constitutionally required to raise every conceivable issue on appeal, and the determination of which issues to raise is generally within counsel's sound discretion. Id. Counsel stated that she believed there was no merit to the claim and that its inclusion on appeal would have detracted from other issues. The Petitioner has failed to establish ineffective assistance in regard to this issue.

State v. Malone, 2009 WL 636120 at *8 (Tenn. Crim App.).

Based upon the state post-conviction record, Petitioner's appellate counsel made an informed strategic decision on issues to appeal. The Tennessee appellate court found counsel's analysis to be

28

consistent with state law. As to the failure to raise a claim on appeal, the Supreme Court o observed that "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of noncompliance, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. at 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). Thus, the Court concludes that the state courts could reasonably conclude that Petitioner's counsel was not ineffective given appellate counsel's strategic decision on appeal.

### 3. Failure to Object to the State's Closing Argument

Petitioner's next claim is that his counsel was ineffective for failure to object to the prosecutor's improper closing argument. As to this claim, the Tennessee Court of Criminal Appeals found:

> The defendant's final argument is that the State made improper remarks and exceeded the scope of the evidence during its closing argument. The State responds that the defendant's failure to contemporaneously object to any improprieties waived the issue on appeal. In the alternative, the State contends that, given the great weight of the evidence against the defendant, any errors in its closing argument would not have affected the verdict.

> At the conclusion of the closing arguments, the defense moved for a mistrial based upon the scope of the prosecutor's closing argument. Specifically, the defendant argued that the State addressed points not in evidence, including that the victim "lived a very good life and had served the community as the Police Chief's wife." On appeal, the defendant adds the argument that the prosecutor improperly characterized him as the "lead sheep" of the group and referred to him and his codefendants as "yahoos." In regard to both of these arguments, when a prosecuting attorney makes objectionable statements during closing argument, but no contemporaneous objection is made, the complaining defendant is not entitled to relief on appeal unless the remarks constitute "plain error." See Tenn. R.App. P. 36(b); Tenn. R.Crim. P. 52(b); State v. Smith, 24 S.W.3d 274, 282 (Tenn.2000). **To determine whether the challenged remarks constitute plain error, we consider five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do**

> substantial justice." Smith, 24 S.W.3d at 282 (quoting State v. Adkisson, 899
> S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be
> established before the existence of plain error will be recognized. Smith, 245
> S.W.3d at 283. Ultimately, the error must have "had an unfair prejudicial
> impact which undermined the fundamental fairness of the trial." Adkisson, 899
> S.W.2d at 642. Based upon the foregoing authority and the weight of the
> evidence against the defendant, we cannot conclude that the challenged remarks
> undermined the fairness or altered the outcome of the trial. Accordingly, we
> determine that this issue is without merit, as it does not constitute plain error.

State v. Malone, 2005 WL 1521788, at *6 (emphasis added).

As to whether the argument represents a serious error under federal law, any prosecutorial comment or argument that induces the jury to accept the government's prosecutor's opinion to the detriment of the facts of the case, is improper. United States v. Young, 470 U.S. 1, 18-19 (1985). A prosecutor may not express a personal opinion on the credibility of any witness. Id. A prosecutor's remark that the defendant was a "vicious animal" is highly improper. Darden v. Wainwright, 477 U.S. 168, 179 n.7, 180 (1986), but under all of the circumstances, was found to be harmless error. Id. at 181. Thus, even if "the prosecutor's remarks exceeded the permissible bounds," the issue remains whether the remark was harmless under all of the circumstances. Young, 470 U.S. 13 n.10.

Applying this standard and in light of the factual context described by the Tennessee appellate court, this Court concludes that the Tennessee Court of Criminal Appeals's decision on this claim is a reasonable determination in accord with established federal law.

A court must also view the effect of the errors cumulatively. Draper v. Adams, 215 F.3d 1325, 2000 WL 712376 *3 (6th Cir. May 23, 2000). Viewing counsel's cited omissions collectively, the Court concludes the Petitioner's counsel was not ineffective within the meaning of the Sixth Amendment.

## Conclusion

For the reasons stated above, the Court concludes that Petitioner's motion for summary judgment should be denied and this action should be dismissed.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of March, 2013.

William J.  Haynes, Jr.
Chief Judge
Middle District of Tennessee